IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　and<br><br>COMMONWEALTH OF VIRGINIA<br><br>　　　　Plaintiffs,<br><br>　　　　　v.<br><br>KMX CHEMICAL CORPORATION,<br><br>　　　　Defendant. | Civil Action No. 2:19-cv-517 |

## **COMPLAINT**

Plaintiffs, the United States of America, by and through the Attorney General of the United States, acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Commonwealth of Virginia file this Complaint and allege as follows:

1.　　This is a civil action pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), against KmX Chemical Corp. ("KmX Chemical" or "Defendant") seeking civil penalties and injunctive relief for violations of Section 111 of the Clean Air Act, 42 U.S.C. § 7411, and the implementing regulations codified at 40 C.F.R. Part 60, Subpart VV (Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for which Construction, Reconstruction, or Modification Commenced After January 5, 1981, and on or Before November 7, 2006) (hereinafter "Subpart VV"), as well as for violations

of Section 112 of the Clean Air Act, 42 U.S.C. § 7412, and the implementing regulations codified at 40 C.F.R. Part 63, Subpart JJJJJJ (National Emission Standards for Hazardous Air Pollutants for Industrial, Commercial, and Institutional Boilers Area Sources) (hereinafter "Subpart 6J").

2.      This action is based on violations that occurred at KmX Chemical's facility located in New Church, Virginia.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b).

4.      This Court has supplemental jurisdiction over the Commonwealth of Virginia's claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the claims are so related to the federal claims as to form part of the same case or controversy.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395, and under Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), because the violations that constitute the basis of this Complaint occurred at Defendant's Facility located in this District.

## NOTICE

6.      Notice of the commencement of this action has been provided to the Commonwealth of Virginia, as required by Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b).

## AUTHORITY

7.      The United States Department of Justice has authority to bring this action on behalf of the Administrator of the EPA under 28 U.S.C. §§ 516 and 519 and Section 305(a) of the Clean Air Act, 42 U.S.C. § 7605(a).

8.      The Commonwealth of Virginia has authority to bring this action under Section 10.1-1316 of the Code of Virginia.

## DEFENDANT

9.      Defendant KmX Chemical Corp. was incorporated in New York in 2004 and has its principal executive offices in Plainview, New York.

10.     KmX Chemical owns and operates a solvent recovery and chemical manufacturing facility located at 30474 Energy Drive, New Church, Virginia 23415 (VADEQ facility registration number 40722), referred to hereinafter as "the Facility."

11.     During KmX's ownership and operation of the Facility, the Facility has produced ethanol, methanol, isopropanol, and butyric acid.

12.     KmX Chemical is a "person" within the meaning of Sections 113(b) and 302(e) of the Clean Air Act, 42 U.S.C. §§ 7413(b) and 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

13.     The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401(b)(1).

## I.     NEW SOURCE PERFORMANCE STANDARDS

### General

14.     Section 111 of the CAA authorizes EPA to promulgate regulations establishing New Source Performance Standards ("NSPS").  42 U.S.C. § 7411.

15.     Section 111(e) of the CAA states that after the effective date of standards of performance promulgated under Section 111, it shall be unlawful for any owner or operator of any

new source to operate such source in violation of any standard of performance applicable to such source.  42 U.S.C. § 7411(e).

16.     The term "standard of performance" is defined as a standard for emissions of air pollutants which reflects the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such reduction and any non-air quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated.  42 U.S.C. § 7411(a)(1).

17.     The term "new source" is defined as any stationary source, the construction or modification of which is commenced after the publication of regulations (or, if earlier, proposed regulations) prescribing a standard of performance under Section 111 of the CAA that will be applicable to such source.  42 U.S.C. § 7411(a)(2).

18.     The term "stationary source" is defined as any building, structure, facility, or installation that emits or may emit any air pollutant.  42 U.S.C. § 7411(a)(3).

19.     The term "owner or operator" is defined as any person who owns, leases, operates, controls, or supervises a stationary source.  42 U.S.C. § 7411(a)(5).

**Subpart VV**

20.      "Volatile Organic Compound (VOC)" means "any organic compound which participates in atmospheric photochemical reactions; or which is measured by a reference method, an equivalent method, an alternative method, or which is determined by procedures specified under any subpart." 40 C.F.R. § 60.2; *see also* 40 C.F.R. § 60.481.

21.     Recognizing VOC emissions from leaking equipment are a significant source of air pollution from chemical manufacturing facilities, EPA promulgated Subpart VV on October 18, 1983 pursuant to Section 111 of the CAA, 42 U.S.C. § 7411.  48 Fed. Reg. 48335.  Subpart VV

has been subsequently amended on several occasions, most recently on June 2, 2008. 73 Fed. Reg. 31379.

22.     Affected facilities in the synthetic organic chemicals manufacturing industry that commenced construction, reconstruction, or modification after January 5, 1981, and on or before November 7, 2006 are subject to the requirements of Subpart VV. *See* 40 C.F.R § 60.480(a)(1), (b). The exceptions to the applicability provision of Subpart VV are not applicable here. *See* 40 C.F.R. § 60.480(d).

23.     An "affected facility" is the group of all equipment within a "process unit." See 40 C.F.R. § 60.480(a)(2).

24.     A "process unit" is defined as "components assembled to produce, as intermediate or final products, one or more of the chemicals listed in [40 C.F.R.] § 60.489." 40 C.F.R. § 60.480.

25.     The list of chemicals in 40 C.F.R. § 60.489 includes, but is not limited to, ethanol, methanol, and isopropanol. *See* 40 C.F.R. § 60.489.

26.     Subpart VV specifies that methods of compliance determination include review of records and reports, review of performance test results, and inspection using the methods and procedures specified in 40 C.F.R. § 60.485. *See* 40 C.F.R. § 60.482-1(b).

27.     Subpart VV imposes various leak detection and monitoring requirements on the equipment in each process unit depending on the type of equipment.

28.     Owners and operators subject to Subpart VV are required to demonstrate compliance with the requirements of §§ 60.482-1 through 60.482-10 or § 60.480(e) for all equipment within 180 days of initial startup.

29.     Owners and operators subject to Subpart VV are required to monitor pumps in light liquid service (40 C.F.R. § 60.482-2) and valves in gas/vapor or light liquid service (40 C.F.R. § 60.482-7).

30.     Pursuant to 40 C.F.R. § 60.485(b), owners and operators determine compliance with applicable standards using Method 21, which is detailed at 40 C.F.R. Part 60, Appendix A (hereinafter "Method 21).

31.     Subpart VV requires that the instrument used to perform Method 21 shall be calibrated before use each day of its use by procedures specified in Method 21.  40 C.F.R. § 60.485(b)(1).

32.     Method 21 includes specific technical requirements for the detection instrument used to conduct monitoring:

> 6.4 The instrument shall be equipped with an electrically driven pump to ensure that a sample is provided to the detector at a constant flow rate. The nominal sample flow rate, as measured at the sample probe tip, shall be 0.10 to 3.0 l/min (0.004 to 0.1 ft$^3$/min) when the probe is fitted with a glass wool plug or filter that may be used to prevent plugging of the instrument.
> 6.5 The instrument shall be equipped with a probe or probe extension or sampling not to exceed 6.4 mm (¼ in) in outside diameter, with a single end opening for admission of sample.

40 C.F.R. Part 60, App. A, Method 21, §§ 6.4 & 6.5.

33.     Section 8.3.1 of Method 21 sets forth the technique which must be used to determine if there is a leak.  40 C.F.R. Part 60, App. A, Method 21, § 8.3.1.

34.     Subpart VV requires that each open-ended valve or line shall be equipped with a cap, blind flange, plug, or a second valve, to seal the open end at all times, except during operations requiring process fluid flow through the open-ended valve or line.  40 C.F.R. § 60.482-6(a).

35.     Subpart VV sets forth record-keeping requirements for leaking components.  40 C.F.R. § 60.486(c).  Whenever a leak is detected  at a valve or pump in heavy liquid service, the

owner or operator is required to keep a log containing the following information in a readily accessible location for at least two years: (1) the instrument and operator identification numbers and the equipment identification number; (2) the date the leak was detected and the dates of each attempt to repair the leak; (3) repair methods applied in each attempt to repair the leak; and (4) "Above 10,000" if the maximum instrument reading is equal to or greater than 10,000 ppm; (5) "Repair Delayed"; (6) the signature of the owner or operator (or designate) whose decision it was that repair could not be effected without a process shutdown; (7) the expected date of successful repair of the leak if the lead was not repaired within 15 days; (8) dates of process unit shutdowns that occur while the equipment is unrepaired; and (9) the date of successful repair of the leak.  40 C.F.R. § 60.486(c).

36.    Subpart VV requires owners and operators to keep a list of identification numbers for all equipment subject to the requirements of Subpart VV.  40 C.F.R. § 60.486(e)(1).

37.    Pursuant to Article 5 of Chapter 50 of its regulations, 9 Va. Admin. Code 5-50-400 through -420, the State Air Pollution Control Board ("the Board") has adopted Subpart VV into its regulations.

38.    Pursuant to 9 Va. Admin. Code 5-50-405, the Board's Article 5 regulations provide the legally enforceable mechanism to facilitate the Commonwealth's obligation to implement and enforce the federal NSPSs as state requirements.

## II.   NATIONAL EMISSION STANDARDS FOR HAZARDOUS AIR POLLUTANTS ("NESHAPS")

### General

39.    Section 112 of the Clean Air Act sets forth a national program for the control of "hazardous air pollutants" (HAPs).  42 U.S.C. § 7412.  Under Section 112, Congress established

a list of 188 HAPs believed to cause adverse health or environmental effects.  42 U.S.C. § 7412(b)(1).

40.     Under Section 112, Congress directed EPA to publish a list of all categories and subcategories of, *inter alia*, major and sources of HAPs.  42 U.S.C. § 7412(c)(1), (3).

41.     "Stationary Source" is defined as any building, structure, facility, or installation that emits or may emit any air pollutant.  42 U.S.C. § 7412(a)(3) (stating that "stationary source" under Section 112(a) has the same meaning as that term has under Section 111(a) of the Clean Air Act.  42 U.S.C. § 7411(a)(3)).

42.     A "category" of sources is a group of sources having some common features suggesting that they should be regulated in the same way and on the same schedule.  57 F.R. 31576 (July 16, 1992).  A single stationary source can be comprised of multiple source categories.  *Id.*

43.     Under Section 112(d) of the Clean Air Act, 42 U.S.C. § 7412(d)(1), Congress directed EPA to promulgate regulations establishing emission standards for each category or subcategory of, *inter alia*, major sources  and area sources of HAPs listed under Section 112(c), 42 U.S.C. 7412 (c).

44.     Under Section 112(h) of the Clean Air Act, 42 U.S.C. § 7412(h), to the extent that it is not feasible to prescribe or enforce an emission standard for control of a HAP, Congress authorized EPA to promulgate "design, equipment, work practice, or operational" standards, which are to be treated as emission standards.  42 U.S.C. § 7412(h).

45.     The emission standards promulgated under Section 112 of the Clean Air Act, 42 U.S.C. § 7412, are known as the National Emission Standards for Hazardous Air Pollutants ("NESHAPs") for Source Categories or "Maximum Achievable Control Technology" ("MACT")

standards.  These emission standards are found in Part 63 of Title 40 of the Code of Federal Regulations.

46.    After the effective date of any emission standard, limitation, or regulation promulgated pursuant to Section 112 of the Clean Air Act, no person may operate a source in violation of such standard, limitation, or regulation.  42 U.S.C. § 7412(i)(3).

**Subpart JJJJJJ**

47.    EPA promulgated Subpart 6J on March 21, 2011 pursuant to Section 112 of the CAA, 42 U.S.C. § 7412.  76 Fed. Reg. 15553.

48.    Subpart JJJJJJ ("Subpart 6J") applies to the owner or operator of an industrial boiler that is located at, or is part of, an area source of HAPs.  *See* 40 C.F.R §63.11193.  The exceptions to the applicability provision of Subpart 6J are not applicable here.  *See* 40 C.F.R. § 63.11195.

49.    "Area source" means any stationary source of hazardous air pollutants that is not a major source, which is in turn defined as any stationary source or group of stationary sources located within a contiguous area and under common control that emits or has the potential to emit considering controls, in the aggregate, 10 tons per year or more of any hazardous air pollutant or 25 tons per year or more of any combination of hazardous air pollutants.

50.    An "industrial boiler" is a boiler used in manufacturing, processing, mining, and refining or any other industry to provide steam, hot water, and/or electricity.  40 C.F.R § 63.11237.

51.    An affected source is an existing source if construction or reconstruction of the affected source commenced on or before June 4, 2010.  40 C.F.R. § 63.11194.

52.    Subpart 6J requires owners and operators of industrial boilers to comply with each applicable work practice standard, emission reduction measure, and management practice as specified in Table 2 of Subpart 6J.  40 C.F.R. § 63.11201(b).

53.     Table 2 of Subpart 6J indicates owners and operators of existing oil-fired boilers with a heat input capacity greater than 5 MMBtu/hour must conduct an initial boiler tune-up as specified in 40 C.F.R. § 63.11214.

54.     Table 2 of Subpart 6J requires owners and operators of existing oil-fired boilers to have a one-time energy assessment performed by a qualified energy assessor.

55.     Subpart 6J required the initial boiler tune-up and one-time energy assessment for existing oil-fired boilers to be completed by March 21, 2014.  40 C.F.R. § 63.11196.

## III.     ENFORCEMENT OF THE CLEAN AIR ACT

56.     Section 113 of the CAA authorizes EPA to commence a civil action for injunctive relief and/or civil penalties against any person who has violated any requirement or prohibition of the CAA or regulations promulgated thereunder, or who has violated any applicable permit or implementation plan.  42 U.S.C. § 7413.

57.     Section 113(b) of the Clean Air Act authorizes the Court to enjoin a violation, to require compliance, to assess and recover a civil penalty, and to award any other appropriate relief for each violation.  42 U.S.C. § 7413(b).

58.     Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note), as amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L. 114-74, Section 701), and 40 C.F.R. § 19.4, EPA may seek penalties of up to $37,500 per day for violations of the CAA that occurred after January 12, 2009, and effective August 1, 2016, up to $93,750 per day for violations that occurred after November 2, 2015.

59.     Va. Code § 10.1-1316 provides that any owner violating or failing, neglecting or refusing to obey any Board regulation or order, any provision of State Air Pollution Control Law,

or any permit condition shall be subject to a civil penalty not to exceed $32,500 for each violation. Each day of violation shall constitute a separate offense.  The provision provides that any owner violating or failing, neglecting or refusing to obey any provision of State Air Pollution Control Law, any Board regulation or order, or any permit condition may be compelled to comply by injunction, mandamus or other appropriate remedy.

## GENERAL ALLEGATIONS

60.     KmX Chemical owns and operates a solvent recovery and chemical manufacturing facility located at 30474 Energy Drive, New Church, Virginia 23415 (the "Facility").

61.     KmX Chemical purchased the Facility in 2004.

62.     KmX Chemical is the "owner or operator," as defined in Section 112(a)(9) of the Clean Air Act, 42 U.S.C. § 7412(a)(9), of the Facility.

63.     EPA conducted an inspection of the Facility on June 4, 2014.  EPA also reviewed information submitted by KmX in response to requests for information pursuant to Section 114 of the CAA, 42 U.S.C. § 7414.

64.     KmX Chemical uses distillation to regenerate, or reclaim, spent or contaminated solvents from outside sources for reuse by the original owner or resale to third parties. During its operation of the Facility, KmX Chemical processed a number of spent solvents, including acetone, diethylene gycol, ethanol, ethylene glycol, isopropanol, methanol, propylene glycol, T-butanol, and isobutanol.

65.     The Facility includes a building, structure, facility, or installation which emits or may emit any air pollutant.  The Facility is therefore a "stationary source," as defined at 42 U.S.C. § 7212(a)(3) and 40 C.F.R. § 63.2.

66.     At all times relevant to this action, KmX's Facility included process units subject to the requirements of 40 C.F.R. Part 60, Subpart VV.

67.     The Facility is comprised of two distillation systems: 1) Distillation System D1/D2 (Process Unit D1/D2); and 2) Distillation System A1/A2 (Process Unit A1/A2).  Both Process Unit D1/D2 and Process Unit A1/A2 include multiple valves and pumps in light liquid service and subject to regulation under Subpart VV.

68.     In KmX's February 29, 2016 written response to an EPA request for information pursuant to Section 114 of the CAA, 42 U.S.C. § 7414, KmX acknowledged that both the Process Unit D1/D2 and the Process Unit A1/A2 were subject to Subpart VV.

69.     The chemical materials fed into Process Unit A1/A2 and Process Unit D1/D2 are separated into heavy liquid and light liquid components.  Following processing, some material is sent to one or more waste tanks, while material considered to be product is sent to one or more storage tanks.

70.     From at least June 1, 2012 to June 30, 2014, KmX Chemical used a ToxiRae Pro PID to conduct its monitoring activities of certain regulated pumps and valves at the Facility.

71.     The ToxiRae Pro PID did not have an electronically driven pump and was not equipped with a probe or probe extension or sampling less than 6.4mm (1/4in).

72.     During EPA's June 4, 2014 inspection of the Facility, EPA identified at least two open-ended lines in the D1/D2 Process Unit that were not equipped with a cap, blind flange, plug, or a second valve.

73.     At the time of EPA's June 4, 2014 inspection of the Facility, a 31.8MM Btu/hour "Nebraska Boiler" constructed prior to June 4, 2010 provided steam heat to Process Unit A1/A2 and Process Unit D1/D2 at the Facility.

74.     Prior to September 17, 2014, KmX used what it characterized as "comparable fuels" as defined by 40 C.F.R. § 261.38 to fuel the "Nebraska Boiler."  Subsequently, KmX stated that it fueled the "Nebraska Boiler" using used oil meeting the specifications in 40 C.F.R. § 279.11.

75.     The "Nebraska Boiler" is an industrial boiler as defined in 40 C.F.R § 63.11237, and therefore is an affected source subject to the regulations and provisions under Subpart 6J.

76.     Records provided by KmX Chemical indicate KmX Chemical conducted the mandatory performance tune-up on the Nebraska Boiler on June 13, 2014.

77.     Records provided by KmX Chemical indicate KmX Chemical conducted the mandatory energy assessment on the Nebraska Boiler on June 19, 2014.

## FIRST CLAIM FOR RELIEF
### 40 C.F. R. Part 60, Subpart VV
### Failure to Properly Monitor Pumps and Valves

78.     The foregoing paragraphs are realleged and incorporated herein by reference.

79.     With certain alternatives and exceptions not relevant here, owners and operators subject to Subpart VV are required to monitor pumps in light liquid service (40 C.F.R. § 60.482-2) and valves in gas/vapor or light liquid service (40 C.F.R. § 60.482-7).

80.     Between June 1, 2012 and June 30, 2014, KmX was required to monitor each pump in light liquid service in the D1/D2 and A1/A2 Distillation Process Units monthly in accordance with the requirements of 40 C.F.R. § 60.482-2, including the use of Method 21.

81.     Between June 1, 2012 and June 30, 2014, KmX was required to monitor each valve in light liquid service in the D1/D2 and A1/A2 Distillation Process Units monthly, or quarterly for those valves at which no leak was detected for two successive months, in accordance with the requirements of 40 C.F.R. § 60.482-7, including the use of Method 21.

82.     From at least June 1, 2012 to June 30, 2014, KmX Chemical used a monitoring device (a ToxiRae Pro PID) that did not have an electronically driven pump and was not equipped with a probe or probe extension or proper sampling to conduct its monitoring activities at the Facility.

83.     KmX Chemical's failure to use a properly designed monitoring device at each pump and valve in light liquid service monthly in accordance with the requirements of 40 C.F.R. § 60.485(b)(1) violated the requirements of 40 C.F.R. § 60.485(b)(1).

84.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of up to $37,500 per day for each violation of the LDAR requirements of 40 C.F.R. Part 60, Subpart VV.  *See supra* Paragraph 58.

85.     The failure to comply with the requirements of Subpart VV also violate the Board's regulations, which incorporate Subpart VV by reference.

86.     As provided in Va. Code § 10.1-1316, the failure to comply with the Board's regulations subjects KmX to injunctive relief and civil penalties of up to $32,500 per day for each violation.

## SECOND CLAIM FOR RELIEF
### 40 C.F.R. Part 60, Subpart VV
### Failure to Calibrate Detection Instrument Before Each Use

87.     The foregoing paragraphs are realleged and incorporated herein by reference.

88.     Owners and operators subject to Subpart VV are required to calibrate the detection instrument before use on each day of its use in accordance with the procedures specified in Method 21.  40 C.F.R. § 60.485(b)(1).

89.     KmX failed to calibrate the detection instrument used for Method 21 prior to the instrument's use pursuant to 40 C.F.R. §§ 60.485(b)(1) and Method 21, §§ 8.1.1.1, 8.2, and 10.1, during the following days of inspection:

March 3-4, 2014

July 1-21, 2014

October 14-17, 2014

January 6-8, 2015

April 1-2, 2015

June 25-26, 2015

September 9-11, 2015

December 21-22, 2015

90.     KmX Chemical's failure to calibrate the detection instrument used for Method 21 monitoring violated Section 111(e) of the CAA, 40 C.F.R. § 60.485(b)(1), and Method 21, §§ 8.1.1.1, 8.2, and 10.1.

91.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of up to $37,500 per day for each violation occurring on or after January 12, 2009, and up to $93,750 per day for violations that occurred after November 2, 2015. *See supra* Paragraph 58.

92.     The failure to comply with the requirements of Subpart VV also violate the Board's regulations, which incorporate Subpart VV by reference.

93.     As provided in Va. Code § 10.1-1316, the failure to comply with the Board's regulations subjects KmX to injunctive relief and civil penalties of up to $32,500 per day for each violation.

### THIRD CLAIM FOR RELIEF
**40 C.F.R. Part 60, Subpart VV**
**Failure to Identify and Monitor Equipment Subject to LDAR Requirements**

94.     The foregoing paragraphs are realleged and incorporated herein by reference.

95.     Section 60.486(e) of 40 C.F.R. Part 60, Subpart VV requires that equipment subject to Subpart VV shall be identified.

96.     Based on KmX's LDAR monitoring data and a component inventory submitted in February 2016, KmX failed to identify and include in its LDAR program 273 valves and 6 pumps from at least January 2014 through at least December 2015.  Additionally, no monitoring was performed on these 273 valves and 6 pumps during this period.

97.     KmX's failure to identify the 273 valves and 6 pumps violates 40 C.F.R. § 60.486(e), while its failure to monitor those components violates 40 C.F.R. § 60.482-2(a) and § 60.482-7(a).  Additionally, KmX failed to demonstrate the compliance of these 273 valves and 6 pumps with application requirements in accordance with 40 C.F.R. § 60.482–1(a).  These various violations of Subpart VV's requirements constitute a violation of Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

98.     As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of up to $37,500 per day, and up to $93,750 per day for violations that occurred after November 2, 2015, for each violation of the LDAR requirements of 40 C.F.R. Part 60, Subpart VV.  *See supra* Paragraph 58.

99.     The failure to comply with the requirements of Subpart VV also violate the Board's regulations, which incorporate Subpart VV by reference.

100.     As provided in Va. Code § 10.1-1316, the failure to comply with the Board's regulations subjects KmX to injunctive relief and civil penalties of up to $32,500 per day for each violation.

### FOURTH CLAIM FOR RELIEF
**40 C.F. R. Part 60, Subpart VV**
**Failure to Conduct Timely LDAR Monitoring**

101.     The foregoing paragraphs are realleged and incorporated herein by reference.

102.     Section 60.482-7 of 40 C.F.R. Part 60, Subpart VV requires that each valve in gas/vapor service and in light liquid service be monitored on a monthly basis, or quarterly basis for those valves at which no leak was detected for two successive months, to detect leaks by the methods specified in 40 C.F.R. § 60.485(a)-(b).

103.     At all times relevant to this Complaint, KmX Chemical was required to use Method 21 to monitor all valves in light liquid service in its D1/D2 and A1/A2 Process Units on a monthly or quarterly basis as specified in 40 C.F.R. § 60.482-7.

104.     Records provided by KmX Chemical indicate KmX Chemical conducted Method 21 monitoring of affected valves for the first quarter (Q1) on March 4, 2014, and did not conduct monitoring again until July 1, 2014. Accordingly, no monitoring was conducted during the second quarter (Q2) of 2014.

105.     Records provided by KmX Chemical indicated KmX Chemical did not conduct Method 21 monitoring in the first quarter (Q1) of 2016.

106.     KmX Chemical's failure to conduct timely LDAR monitoring in Q2 of 2014 and Q1 of 2016 for numerous valves in light liquid service at the frequency and as required by 40 C.F.R. § 60.482-7 violated section 111(e) of the CAA and 40 C.F.R. § 60.482-7.

107.    As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of up to $37,500 per day for each violation of the LDAR requirements of 40 C.F.R. Part 60, Subpart VV, and up to $93,750 per day for violations that occurred after November 2, 2015.  *See supra* Paragraph 58.

108.    The failure to comply with the requirements of Subpart VV also violate the Board's regulations, which incorporate Subpart VV by reference.

109.    As provided in Va. Code § 10.1-1316, the failure to comply with the Board's regulations subjects KmX to injunctive relief and civil penalties of up to $32,500 per day for each violation.

**FIFTH CLAIM FOR RELIEF**
**40 C.F. R. Part 60, Subpart VV**
**Failure to Monitor Pumps in Light Liquid Service**

110.    The foregoing paragraphs are realleged and incorporated herein by reference.

111.    Section 60.482-2 of 40 C.F.R. Part 60, Subpart VV  requires that each pump in light liquid service be monitored on a monthly basis to detect leaks by the methods specified in 40 C.F.R. § 60.485(a)-(b).

112.    Between July 1, 2012 and November 30, 2015, KmX Chemical was required to use Method 21 to monitor pumps in light liquid service in its D1/D2 and A1/A2 Process Units on a monthly basis pursuant to the requirements of 40 C.F.R. § 60.482-2.

113.    Records provided by KmX Chemical indicate between at least July 2012 and November 2015, KmX Chemical performed monitoring activities for pumps in light liquid service on a quarterly basis only. Accordingly, between July 2012 and November 2015, KmX Chemical

missed the following 28 monthly monitoring events for its affected pumps, as required by 40 C.F.R. § 60.482-2:

| | |
|---|---|
| July, 2012 | April, 2014 |
| August, 2012 | May, 2014 |
| October, 2012 | June, 2014 |
| November, 2012 | August, 2014 |
| January, 2013 | September, 2014 |
| February, 2013 | November, 2014 |
| April, 2013 | December, 2014 |
| May, 2013 | February, 2015 |
| July, 2013 | March, 2015 |
| August, 2013 | May, 2015 |
| October, 2013 | July, 2015 |
| November, 2013 | August, 2015 |
| January, 2014 | October, 2015 |
| February, 2014 | November, 2015 |

114. Records provided by KmX Chemical indicated KmX Chemical did not conduct Method 21 monitoring in the first quarter (Q1) of 2016.

115. KmX Chemical's failure to conduct monthly monitoring of each pump in light liquid service at the frequency and as required by required by 40 C.F.R. § 60.482-2 violated section 111(e) of the CAA and 40 C.F.R. § 60.482-2.

116. As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of

up to $37,500 per day for each violation of the LDAR requirements of 40 C.F.R. Part 60, Subpart VV, and up to $93,750 per day for violations that occurred after November 2, 2015. *See supra* Paragraph 58.

117.    The failure to comply with the requirements of Subpart VV also violate the Board's regulations, which incorporate Subpart VV by reference.

118.    As provided in Va. Code § 10.1-1316, the failure to comply with the Board's regulations subjects KmX to injunctive relief and civil penalties of up to $32,500 per day for each violation.

**SIXTH CLAIM FOR RELIEF**
**40 C.F.R. Part 60, Subpart VV**
**Failure to Equip Open-Ended Lines with a Cap, Blind Flange, Plug, or a Second Valve**

119.    The foregoing paragraphs are realleged and incorporated herein by reference.

120.    Section 60.482-6 of 40 C.F.R. Part 60, Subpart VV requires that each open-ended valve or line shall be equipped with a cap, blind flange, plug, or a second valve, to seal the open end at all times, except during operations requiring process fluid flow through the open-ended valve or line.

121.    A June 2014 inspection conducted by EPA revealed at least two opened-ended lines in the D1/D2 Process Unit were not equipped with a cap, blind flange, plug, or a second valve, pursuant to 40 C.F.R. § 60.482-6(a).

122.    KmX Chemical's failure to equip at least two opened-ended lines in the D1/D2 Process Unit with a cap, blind flange, plug, or a second valve in accordance with 40 C.F.R. § 60.482-6(a) violated section 111(e) of the CAA and 40 C.F.R. § 60.482-6.

123.    As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of

up to $37,500 per day for each violation of the LDAR requirements of 40 C.F.R. Part 60, Subpart VV. *See supra* Paragraph 58.

124.   The failure to comply with the requirements of Subpart VV also violate the Board's regulations, which incorporate Subpart VV by reference.

125.   As provided in Va. Code § 10.1-1316, the failure to comply with the Board's regulations subjects KmX to injunctive relief and civil penalties of up to $32,500 per day for each violation.

<u>SEVENTH CLAIM FOR RELIEF</u>
**40 C.F.R. Part 60, Subpart VV**
**Failure to Record Information Pertaining to Three Leaking Valves in a Log**

126.   The foregoing paragraphs are realleged and incorporated herein by reference.

127.   Pursuant to 40 C.F.R. § 60.486(c), whenever a leak is detected  at a valve or pump in heavy liquid service, the owner or operator is required to keep a log detailing information about the leaking component.  40 C.F.R. § 60.486(c).

128.   Based on quarterly LDAR records provided by KmX Chemical, three leaking valves in heavy liquid service were detected between June 25-27, 2012 (2012 Q2) and September 27-29, 2012 (2012 Q3).

129.   KmX Chemical failed to properly keep the required log after monitoring these three leaking valves in accordance with 40 C.F.R. § 60.486(c).

130.   KmX Chemical therefore violated Section 111(e) of the CAA and 40 C.F.R. § 60.486(c).

131.   As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of

up to $37,500 per day for each violation of the LDAR requirements of 40 C.F.R. Part 60, Subpart VV. *See supra* Paragraph 58.

132.    The failure to comply with the requirements of Subpart VV also violate the Board's regulations, which incorporate Subpart VV by reference.

133.    As provided in Va. Code § 10.1-1316, the failure to comply with the Board's regulations subjects KmX to injunctive relief and civil penalties of up to $32,500 per day for each violation.

## EIGHTH CLAIM FOR RELIEF
### 40 C.F.R. Part 63, Subpart JJJJJJ
### Failure to Conduct a Boiler Tune-Up Prior to March 21, 2014

134.    The foregoing paragraphs are realleged and incorporated herein by reference.

135.    Table 2 of Subpart 6J indicates owners and operators of existing oil-fired boilers with a heat input capacity greater than 5 MMBtu/hour must conduct an initial boiler tune-up as specified in 40. C.F.R. § 63.11214.

136.    In accordance with 40 C.F.R. § 63.11214(b), KmX Chemical was required to conduct an initial performance tune-up on its Nebraska Boiler no later than March 21, 2014.

137.    Records provided by KmX Chemical indicate KmX Chemical did not conduct the mandatory performance tune-up on the Nebraska Boiler until June 13, 2014.

138.    KmX Chemical's failure to conduct a timely performance tune-up violated section 111(e) of the CAA and 40 C.F.R. § 63.11214(b).

139.    As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of up to $37,500 per day for each violation of the requirements of 40 C.F.R. Part 63, Subpart 6J. *See supra* Paragraph 58.

## NINTH CLAIM FOR RELIEF
### 40 C.F.R. Part 63, Subpart JJJJJJ
### Failure to Conduct an Energy Assessment Prior to March 21, 2014

140.    The foregoing paragraphs are realleged and incorporated herein by reference.

141.    Table 2 of Subpart 6J requires owners and operators of existing oil-fired boilers to have a one-time energy assessment performed by a qualified energy assessor.

142.    In accordance with 40 C.F.R. § 63.11196(a)(3), KmX Chemical was required to complete an energy assessment on its Nebraska Boiler no later than March 21, 2014.

143.    Records provided by KmX Chemical indicate KmX Chemical did not conduct the mandatory energy assessment on its Nebraska Boiler until June 19, 2014.

144.    KmX Chemical therefore violated Section 111(e) of the CAA and 40 C.F.R. § 63.11201(b).

145.    As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, the violations set forth above subject KmX Chemical to injunctive relief and civil penalties of up to $37,500 per day for each violation of the requirements of 40 C.F.R. Part 63, Subpart 6J. *See supra* Paragraph 58.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 145 above, the United States of America and the Commonwealth of Virginia request that this Court:

1.    Permanently enjoin Defendant from operating the Facility except in accordance with the CAA and any applicable regulatory requirements;

2.    Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged above;

3.    Assess, for the United States, a civil penalty against Defendant of up to $37,500 per day for each violation that occurred on and after January 13, 2009 and up to $93,750 per day for each violation that occurred after November 2, 2015;

4.    Assess, for the Commonwealth of Virginia, a civil penalty against Defendant of up to $32,500 per day per violation;

5.    Award Plaintiffs their costs of this action; and,

6.    Grant such other relief as the Court deems just and proper.


Dated:    September 30, 2019

Respectfully submitted,


G. ZACHARY TERWILLIGER
United States Attorney


By:    /s/ *Clare P. Wuerker*
CLARE P. WUERKER
Assistant United States Attorney
Virginia Bar No. 79236
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone – 757-441-6331
Facsimile – 757-441-6689
E-Mail – Clare.Wuerker@usdoj.gov

THOMAS P. KOLKIN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone - 202-305-0427
Facsimile - 202-514-0097
E-Mail - Thomas.Kolkin@usdoj.gov

24

Complaint – *United States v. KmX Chemical Corporation*

_/s/_

PAUL KUGELMAN, JR. (VSB No.: 41624)
Senior Assistant Attorney General/Chief
Environmental Section
Office of the Attorney General
Commonwealth of Virginia
202 N. 9th Street
Richmond, Virginia 23219
(804) 786-3811 – Office
pkugelman@oag.state.va.us